Jeffrey Wayne DUBOIS, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 08SC34.

Supreme Court of Colorado,
En Banc.

June 8, 2009.

Rehearing Denied June 29, 2009.

Douglas K. Wilson, Colorado State Public Defender, Ned R. Jaeckle, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, John J. Fuerst III, Senior Assistant Attorney Gen-

eral, Denver, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

We granted certiorari in this case to review whether a deputy sheriff and Alamosa County are eligible for compensation under the restitution statute, section 18-1.3-602(4)(a), C.R.S. (2008), as victims of the defendant's crime of vehicular eluding, where the deputy was involved in a single car accident while en route to respond to another deputy's call for assistance. The trial court found both the deputy sheriff and Alamosa County to be victims for purposes of the restitution statute, and accordingly ordered the defendant, Jeffrey Dubois, to pay restitution to those parties. The court of appeals subsequently affirmed the trial court's order in a published opinion. *People v. Dubois*, No. 06CA1089, — P.3d —, 2007 WL 3378339 (Colo.App. Nov. 15, 2007). Because we find the deputy sheriff and Alamosa County to be within the statutory meaning of "victim" in the restitution statute, we affirm the court of appeals.

## II. Facts and Procedural History

Pursuant to a plea agreement, the defendant, Jeffrey Dubois, pled guilty to, and was convicted of, vehicular eluding for attempting to elude Alamosa County Deputy Mark Thompson. The parties agreed to resolve the contested issue of restitution at a hearing. The trial court made the following findings of fact. Deputy Thompson of the Alamosa County Sheriff's Department responded to a call of domestic violence and attempted to arrest Dubois. Dubois fled in his car and Deputy Thompson gave chase. Deputy Thompson radioed his dispatcher and asked for assistance from any available Costilla County deputies or state troopers in the area because the chase was proceeding

into Costilla County and away from Alamosa. Deputy Benavidez is an Alamosa County deputy. She was at home but on duty at the time she heard the call for assistance. Although not specifically requested to do so, Deputy Benavidez immediately set out in her car to assist Deputy Thompson. In the course of her pursuit, Deputy Benavidez was involved in a single car accident that resulted in the total destruction of her patrol car.

The trial court determined that because Deputy Benavidez was on duty, she had no choice but to respond to Deputy Thompson's call for assistance, even though not specifically requested to do so. As a result of this finding, the trial court determined both Deputy Benavidez and the Alamosa County Sheriff's Department were entitled to an award of restitution. Accordingly, the trial court ordered restitution in the amount of $171.92 to Deputy Benavidez for personal losses, and $22,509.23 to Alamosa County for the loss of the patrol car. The court of appeals affirmed, finding that Deputy Benavidez and the Alamosa County Sheriff's Department qualify as "victims" as defined by the restitution statute. *Dubois*, No. 06CA1089 slip op. at 2, — P.3d at —, 2007 WL 3378339. Moreover, the court of appeals found that Dubois's conduct was the proximate cause of Deputy Benavidez's crash and therefore held the trial court's award of restitution valid. *Id.*[1] This court granted certiorari to determine whether Deputy Benavidez and the Alamosa County Sheriff's Department are "victims" for purposes of the restitution statute, and now holds that they are. Accordingly, the decision of the court of appeals is affirmed.

## III. Analysis

Dubois argues that the statutory term "victim" does not apply to Deputy Benavidez or Alamosa County because neither is the party against whom Dubois's crime was perpetrated. Dubois asserts that because he

---

1. The restitution statute requires the injuries of the "victim" to be proximately caused by the offender's conduct. § 18-1.3-602(3)(a), C.R.S. (2008). This issue was litigated at trial where the trial court found Deputy Benavidez's injuries to be proximately caused by Dubois's conduct. The court of appeals upheld this decision and we declined to grant certiorari to further consider the issue. Because we are not reviewing the finding of proximate cause, we assume for purposes of our analysis here that the injuries to Benavidez and Alamosa County were proximately caused by the conduct of Dubois.

was convicted of eluding Deputy Thompson, not Deputy Benavidez, only Deputy Thompson is a "victim" for purposes of a restitution award. We disagree.

 The issue presented requires the interpretation of subsection 18–1.3–602(4)(a), specifically the term "victim" for purposes of restitution. Interpretation of statutes is a question of law and therefore subject to de novo review. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991). In construing a statute, we aim to ascertain and give effect to the intent of the General Assembly. *Id.* "If the language in the statute is clear and the intent of the General Assembly may be discerned with reasonable certainty, it is not necessary to resort to other rules of statutory interpretation." *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo.1990). In this case, resort to tools of statutory construction is appropriate because the statutory language, as we will explain, is less than clear.

Subsection 18–1.3–602(4)(a) states, " 'Victim' means any person aggrieved by the conduct of an offender," and lists a number of non-exclusive examples, none of which is relevant to the present case. Although we find this statutory language unclear because it is potentially boundless, we conclude that Alamosa County and Deputy Benavidez fall within the meaning of "victim."

Dubois asserts that this court's precedent established in two 1980s cases, *People v. Deadmond*, 683 P.2d 763 (Colo.1984), and *People v. Quinonez*, 735 P.2d 159 (Colo.1987), establishes that a sentencing court can only award restitution to the direct victim of the criminal act. However, the use of the term "victim" for purposes of restitution has undergone several changes by the General Assembly since those cases were decided, casting doubt on their continuing validity. As such, a review of these changes is warranted.

The first relevant case in this area is *People v. Deadmond*, where this court held restitution payments were authorized "only to the *direct victims* of criminal conduct—the person or entity whose injuries resulted from

the conduct alleged as the basis for criminal proceedings against the defendant." 683 P.2d at 774 (emphasis added). Following that decision, the General Assembly amended the restitution statute to allow restitution awards for parties that suffered losses because of contractual relationships with the victim of the offender's conduct,[2] but otherwise retained the general description of "victim" at issue in *Deadmond*:

> "Victim", as used in this section, means the party *immediately and directly* aggrieved by a defendant, who is convicted of a criminal act.

Ch. 140, sec. 1, § 16–11–204.5(4), 1985 Colo. Sess. Laws 630 (emphasis added).

Subsequently, this court addressed the scope of the term "victim" for purposes of restitution in *People v. Quinonez*. In *Quinonez*, an altercation between the occupants of two cars resulted in the injury of one person and the death of another, both occupants of the same car. 735 P.2d at 161. The defendant was charged with offenses relating to the death, but not charged with any offense related to the injured individual. The defendant challenged a restitution order that required payment to the injured occupant. *Id.* This court held that "[a]bsent consent, a defendant granted probation upon conviction of an offense may be required to pay restitution only to persons injured by the conduct alleged as the basis for the conviction. Such allegations would generally be found in the information or an indictment." *Id.* at 162. The *Quinonez* court found a "clear legislative policy to limit the authority of trial courts" to order restitution payments only to "victims" who were immediately and directly aggrieved by the conduct of the defendant. *Id.* As this court later explained in its only other case on this issue, "[i]n *Quinonez*, the offense charged required as an element of proof the fact of injury to a *particular person;* thus the trial court improperly required that restitution be paid to a person whose injuries were not alleged in the charging document to have resulted from the defendant's charged

**2.** This now appears in section 18–1.3–602(4)(a)(III), C.R.S. (2008), as an example of a "victim."

conduct." *People v. Borquez,* 814 P.2d 382, 384 (Colo.1991) (emphasis added).

In 1999, twelve years after this court decided *Quinonez,* the General Assembly directed the legislative council to conduct a study of criminal restitution in Colorado. § 16–11–101.5(6)(a), C.R.S. (1999). Among other things, the legislative council was directed to examine existing restitution statutes to identify inconsistencies and to make recommendations for statutory changes to facilitate greater offender accountability. The council found that there were three different, but not necessarily contradictory, uses of the term "victim" in various restitution statutes. Colorado Legislative Council, *Research Publication 467: Study of Criminal Restitution in Colorado,* 21 (November, 1999). To rectify the inconsistencies created by the three statutes, the council recommended a universal understanding of the term "victim":

> "Victim" means any person against whom any felony, misdemeanor, petty offense, or traffic misdemeanor has been perpetrated or attempted, including any person who has suffered losses because of a contractual relationship with such party, including, but not limited to, an insurer, or because of liability under section 14–5–110, C.R.S., *who has been immediately and directly aggrieved by an offender's conduct* ....

*Id.* at 24 (emphasis added). After receiving this study, the General Assembly adopted the current statutory provisions governing criminal restitution. The General Assembly followed the recommendation to adopt a universal understanding of "victim," but dropped the phrase "immediately and directly" from the council's proposed description of "victim." The definition now reads, in relevant part, "'Victim' means *any person aggrieved* by the conduct of an offender." § 18–1.3–602(4)(a) (emphasis added).

In 2005, the General Assembly made one additional change to the restitution statute and the term "victim" contained therein. In the 2005 amendments, the term "restitution" was expanded to include all costs incurred by a government agency to:

> (A) Remove, clean up, or remediate a place used to manufacture or attempt to

manufacture a controlled substance or which contains a controlled substance or which contains chemicals, supplies, or equipment used or intended to be used in the manufacturing of a controlled substance; or

(B) Store, preserve, or test evidence of a controlled substance violation.

Ch. 321, sec. 1, § 18–1.3–602, 2005 Colo. Sess. Laws 1498. The term "victim" was also expanded to explicitly include "any person who had to expend resources for the purposes" described above. Ch. 321, sec. 2, § 18–1.3–602, 2005 Colo. Sess. Laws 1499.

Dubois first argues that the 2000 amendments do not modify or abrogate the precedent established in *Deadmond* or *Quinonez* because they are simply an attempt to consolidate the various statutory references to "victim." Second, he asserts that the 2005 amendments establish that the General Assembly did not intend law enforcement officials such as Deputy Benavidez to be included within the meaning of "victim." Dubois contends that the 2005 amendments make it clear that costs incurred by police officers that are incidental to a defendant's commission of a crime do not fall under the general definition of victim, and therefore must be expressly included by the General Assembly to be compensable as restitution. Because the costs incurred by Deputy Benavidez and Alamosa County were incurred incidental to his crime of vehicular eluding of Deputy Thompson, but, Dubois asserts, are not expressly included within the description of "victim" like the costs of remediating a site used to produce a controlled substance, those costs cannot be assessed as restitution. In other words, he argues that if Deputy Benavidez and Alamosa County are "victims" under the facts of this case, so is any law enforcement agency that incurs costs incidental to the apprehension of a party involved in the commission of a crime. If such were the case, Dubois asserts, the specific addition of the 2005 amendments would have been unnecessary. We find these arguments without merit.

First, the 2000 amendments to the restitution statute demonstrate a legislative intent to change the term "victim." Just as the *Deadmond* and *Quinonez* courts found that

the then current statutory language, which restricted payment to the "victim" as the person who had been immediately and directly aggrieved by an offender's conduct, signaled a legislative intent to limit restitution to a particular person, the removal of those words from the definition of "victim" in the 2000 amendments demonstrates a legislative intent to include additional victims beyond only those named in the information or indictment. *See* Norman J. Singer, *Sutherland Statutory Construction*, § 46.6 at 231–48 (7th ed.2007) (in determining legislative intent, courts have a responsibility to give effect to the words used in the statute, and every word excluded from a statute must be presumed to have been excluded for a reason). Changing the definition of "victim" to include "[a]ny person aggrieved by the conduct of an offender" indicates the General Assembly intended to expand the reach of "victim" beyond the prior understanding of "any person ... who has who has been *immediately and directly aggrieved* by an offender's conduct." While it is difficult to precisely articulate the difference between "aggrieved" and "immediately and directly aggrieved," the requirement of proximate cause remains in the restitution statute and serves to limit the ambit of potential restitution awards. As noted, the trial court found proximate cause in this case and that determination is not before us. Therefore, although the statutory language remains somewhat unclear, we find that Deputy Benavidez and Alamosa County fall within the current understanding of "victim" that the legislature implemented in the 2000 amendments.

Second, the specific inclusion in the statutory reference to "restitution" of costs incurred to remediate a place used to manufacture a controlled substance does not establish that Deputy Benavidez and the County were not intended to be included within the general understanding of "victim," because the nature of the underlying crimes is quite different between this case and that particular situation.

## A. Deputy Benavidez and Alamosa County Fall Within the Statutory Meaning of Victim

 Dubois was charged with, and pled guilty to, vehicular eluding of Deputy Thompson. The crime of Vehicular Eluding is defined as follows:

> [a]ny person who, while operating a motor vehicle, knowingly eludes or attempts to elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a reckless manner, commits vehicular eluding.

§ 18–9–116.5, C.R.S. (2008). Similar to *Quinonez,* the elements of this crime require proof that the defendant committed certain acts against a particular person, i.e., a peace officer, in this case Deputy Thompson. Deputy Benavidez was miles away from the location of the offense when she crashed her car and it is apparent that Deputy Benavidez was not immediately and directly aggrieved by Dubois's conduct. A charge of eluding was not brought with respect to Deputy Benavidez. Nonetheless, we find that Deputy Benavidez falls within the understanding of "victim" implemented by the 2000 amendments to the restitution statute because she was "aggrieved by" the conduct of Dubois. Moreover, Alamosa County was also aggrieved by Dubois's conduct because it sustained losses when Deputy Benavidez's vehicle was damaged. We find that the restitution statute no longer limits restitution "only to persons injured by the conduct alleged as the basis for the conviction." *Quinonez,* 735 P.2d at 162.

We do not intend our holding in this case to imply that all police officers who suffer injuries when responding to a call for assistance in the line of duty are "victims" entitled to an award of restitution. In fact, they generally are not. There is no indication in the restitution statute or its legislative history that the legislature intended to usually include police officers as "victims." That being said, it is also true that governmental entities are not explicitly excluded as recipients of a restitution award. With no explicit exclusion, a governmental entity counts as "any person" as required by that statute. Section 2–4–401, C.R.S. (2008), provides some relevant definitions for all statutes un-

less the context otherwise requires, which is not the case here. That section states, " 'Person' means any individual, corporation, *government or governmental subdivision or agency,* business trust, estate, trust, limited liability company, partnership, association, or other legal entity." § 2–4–401(8) (emphasis added). Therefore, it is unclear whether police officers should generally be eligible for restitution awards. With no direct guidance, we hold that typically the legislature must specifically include law enforcement costs within the restitution statute for them to be eligible for an award of restitution.

■ However, in the present case we find that Deputy Benavidez and the Alamosa County Sheriff's Department fall within the general meaning of "victim" and do not therefore need to be explicitly included in order to be eligible for restitution. We come to this conclusion because this case presents a relatively discrete scenario; an essential element of the underlying crime requires the primary "victim" to be a peace officer. Here, Deputy Thompson was a peace officer and, as the trial court found, Deputy Benavidez was required to assist him when she heard the call on her radio. Moreover, the underlying crime requires the use of a vehicle and it is reasonably foreseeable that other peace officers would respond by driving to the scene of the crime and might sustain injuries from a vehicular accident while responding. Under these facts, we find that Deputy Benavidez and Alamosa County fall within the statutory term "victim" for purposes of restitution. However, we also conclude peace officers are generally entitled to restitution only when the underlying crime defines a peace officer as the victim, as vehicular eluding necessarily does, or have been specifically included by the legislature.[3]

Therefore, we hold that Deputy Benavidez and Alamosa County fall within the scope of "victim" for purposes of the restitution statute. The language "aggrieved by the conduct of an offender," is not limitless in its reach and was not intended to include the ordinary expenses of law enforcement. However, we find that in situations where one peace officer is involved in an accident while responding to a crime in which another peace officer is statutorily defined as the victim, restitution is warranted. This conclusion is bolstered by the General Assembly's express declaration that the restitution statute is to be liberally construed. § 18–1.3–601(2), C.R.S. (2008).

**B. 2005 Amendments Not Rendered Superfluous by Inclusion of Deputy Benavidez and Alamosa County within Definition of Victim**

The conclusion that Deputy Benavidez and the Alamosa County Sheriff's Department fall within the definition of "victim" does not mean that any law enforcement agency that incurs costs incident to it duties is entitled to restitution. Rather, it is the particular nature of the crime involved in this case, vehicular eluding of a peace officer, that establishes the right to a restitution award. With this understanding, it becomes apparent that the specific inclusion of the costs associated with remediating a controlled substance site in the 2005 amendments to the restitution statute does not create a legislative redundancy. Those costs are of a different nature from the damages suffered in this case.

As noted, the primary victim of the vehicular eluding charge was Deputy Thompson. Deputy Benavidez was required to respond to the call for assistance, and it was reasonably foreseeable that another peace officer would attempt to assist Deputy Thompson. When she was involved in the accident, she and Alamosa County were "aggrieved by" the conduct of Dubois. On the other hand, when someone engages in the production of a

---

3. We also note that the restitution statute specifically provides that restitution may be ordered to "Any victim compensation board that has paid a victim compensation claim." § 18–1.3–602(4)(a)(IV), C.R.S. (2008). The definition of "victim" provided within the Crime Victim Compensation Act, §§ 24–4.1–101 to –119, C.R.S. (2008), the legislation establishing victim compensation boards, appears broader than the definition of "victim" provided in the restitution statute. As such, it is possible that a victim compensation board could make an award to a peace officer in circumstances where the underlying crime does not specifically define a peace officer as the victim and a court could then order a defendant to pay restitution to the victim compensation board for that amount.

controlled substance, a particular police officer is not a "victim." The legislature could have imposed clean up costs solely on the landowner. Instead, the legislature chose to treat society as a whole as the entity "aggrieved by" the conduct of the offender. The costs incurred by a government agency to remediate a site used for the manufacture of a controlled substance are not suffered as a "victim" in the sense that Deputy Benavidez and the Alamosa County Sheriff's Department were "victims" in this case. The government agency is not "aggrieved by" the production of a controlled substance or by having to clean it up. Rather, those costs are suffered because any site used for such purposes must be remediated to make it habitable by members of the real class of "victims" of such an activity, namely the public at large.

This conclusion is bolstered by the fact that the substantive additions of the 2005 amendments were within the description of "restitution," not the term "victim." In the 2005 amendments, the definition of restitution was amended to include all costs incurred by a government agency to:

(A) Remove, clean up, or remediate a place used to manufacture or attempt to manufacture a controlled substance or which contains a controlled substance or which contains chemicals, supplies, or equipment used or intended to be used in the manufacturing of a controlled substance; or

(B) Store, preserve, or test evidence of a controlled substance violation.

Ch. 321, sec. 1, § 18–1.3–602, 2005 Colo. Sess. Laws 1498. The only change to "victim" was a reference to the changes being made under "restitution." Specifically, "victim" was changed to include "any person who had to expend resources" to remediate a controlled substance site as outlined under "restitution." Ch. 321, sec. 2, § 18–1.3–602, 2005 Colo. Sess. Laws 1499.

This change to "victim" simply made the entire scheme cohesive to avoid any potential loopholes. The 2005 amendments had little, if any, substantive impact on the general understanding of "victim" as it applies in this case. Rather, the 2005 amendments modi-

fied "restitution" to specifically include the costs associated with the particular situation where a government agency is charged with remediating a controlled substance site in order to make it habitable by members of the public. As such, the conclusion that Deputy Benavidez and Alamosa County qualify as "victims" for purposes of restitution does not make the 2005 amendments superfluous.

## IV. Conclusion

The facts of this case establish a relatively unique set of circumstances that lead to the conclusion that Deputy Benavidez and the Alamosa County Sheriff's Department fall within the term "victim" for purposes of restitution. The underlying crime in this case was vehicular eluding of a peace officer. It involved a peace officer as the primary victim, which is generally not true of other crimes. It was foreseeable that Deputy Benavidez, or some other peace officer, would respond to a request for assistance from Deputy Thompson. Moreover, it was reasonably foreseeable that a second officer could be involved in an automobile accident while responding to assist the first officer, as occurred in this case, because the crime was vehicular eluding. Therefore, we find that both Deputy Benavidez and Alamosa County fall within the term "victim" for purposes of restitution.

However, this is not to say that all costs incurred by law enforcement agencies incidental to the apprehension of a criminal establish a right to a restitution award. In most cases, a peace officer or sheriff's department will not fall within the meaning of "victim" for purposes of restitution. Such is the case for those costs associated with remediating a site used for the production of a controlled substance. In that case, the real "victim" at issue is the public at large, and the remediation costs incurred by a government agency charged with such a task are suffered on behalf of the public. As such, an express legislative pronouncement that such costs are to be included for purposes of restitution was necessary.

In the present case, such explicit guidance is not necessary because Deputy Benavidez and Alamosa County fall within the under-

standing of "victim" provided in the restitution statute. We conclude the trial court and court of appeals were correct in ordering and upholding an award of restitution in this case. Therefore we affirm the court of appeals' opinion.

