2012 CO 49

### The PEOPLE of the State of Colorado, Petitioner

v.

### Nicolette PADILLA–LOPEZ, Respondent.

#### No. 10SC832.

Supreme Court of Colorado,
En Banc.

June 25, 2012.

---

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Public Defender, Michael C. Mattis, Deputy Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 In this case, we accepted certiorari on a statutory construction issue involving the definition of the word "victim" within the criminal case restitution statute, sections 18–1.3–601 to –603, C.R.S. (2011).[1] Under that statute, the general assembly has defined "victim" as "any person aggrieved by the conduct of an offender." § 18–1.3–602(4)(a). The prosecution argues that the El Paso County Department of Human Services (DHS) is a victim entitled to restitution from Nicolette Padilla–Lopez because it was required to expend funds to provide foster care for her children as a result of her guilty plea to misdemeanor child abuse. The court of appeals held that DHS could not be considered a victim for purposes of the criminal case restitution statute because the elements of the underlying crime of child abuse pertain to wrongful conduct against the child and do not include a wrong against DHS. We agree.

¶ 2 We hold that the existing criminal case restitution statute does not classify DHS as a "victim" for the purpose of recovering costs it has expended in the course of fulfilling its statutorily mandated duty to provide necessary care to dependent and neglected children.

## I.

¶ 3 In July 2007, the police arrested Nicolette Padilla–Lopez for possession of illegal drugs. Alleging the presence of illegal drugs and drug paraphernalia in the home and within reach of her two young children, the prosecution charged her with child abuse. She subsequently pled guilty to two counts of possession, misdemeanor theft, and misdemeanor child abuse. As part of the plea agreement, Padilla–Lopez stipulated that she would pay lawfully imposed restitution, but did not stipulate that DHS was a victim to which she owed restitution. Because of the child abuse conviction, the state removed Padilla–Lopez's children from her and placed them in foster care.

¶ 4 The district court recites in its order that DHS sought recovery of expenditures it made "for foster care for the children or family therapy involving the children or the care of the children." It ordered Padilla–Lopez to pay $19,295.14, the full amount of DHS's expenditures, in restitution to compensate the DHS for the cost of caring for and providing psychological counseling for her children while the children were in DHS custody. The district court ruled that the costs incurred by DHS were "proximately caused by Defendant's illegal conduct" of drug possession and use; therefore, DHS was a "victim" entitled to restitution under the statute. The district court's order does not address the provision of section 18–1.3–602(4)(a) defining "victim" as a person "aggrieved by the conduct of an offender." Instead, the trial court focused only on the "proximately caused" language of section 18–1.3–602(3)(a), describing "restitution." The district court's ruling states as follows:

> The caseworker assigned to Defendant's case testified that foster care for the Defendant's children was instituted and continued primarily as a result of Defendant's illegal drug possession and use. Thus, the Court finds that the expenditure of resources was proximately caused by Defendant's illegal conduct.

¶ 5 Padilla–Lopez appealed, arguing that DHS was not a victim as defined by the restitution statute. The court of appeals agreed, holding that because the underlying

---

**1.** The issue on which we granted certiorari was "[w]hether the Department of Human Services is a "victim" within the meaning of the definition of "victim" in the restitution statute, section 18–1.3–602(4)(a), C.R.S. (2010)."

crime of child abuse requires wrongful conduct against a child, DHS, as a governmental agency responsible for the care of dependent and neglected children, could not be a victim of the underlying crime and thus not a victim within the meaning of the restitution statute. The court of appeals distinguished this case from cases where an essential element of the underlying crime required the victim to be a peace officer or where the defendant's unlawful conduct was directed against the government agency entitled to restitution. We granted certiorari to determine whether the district court properly awarded restitution to DHS under the restitution statute. We agree with the court of appeals' judgment reversing the trial court's order.

## II.

¶ 6 We hold that the existing criminal case restitution statute does not classify DHS as a "victim" for the purpose of recovering costs it has expended in the course of fulfilling its statutorily mandated duty to provide necessary care to dependent and neglected children.

### A. Standard of Review

¶ 7 We interpret statutes de novo. *People v. Smith*, 254 P.3d 1158, 1161 (Colo. 2011). Our goal is to give effect to the intent of the legislature. *Sigala v. Atencio's Mkt.*, 184 P.3d 40, 42 (Colo.2008). We accord words and phrases their plain and ordinary meaning. *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo.2011). If we have previously construed a statute, our doctrine of stare decisis compels us to "apply prior precedent unless we are clearly convinced that (1) the rule was originally erroneous or is no longer sound due to changing conditions and (2) more good than harm will come from departing from precedent." *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644 (Colo.2005); *see also Martin v. People*, 27 P.3d 846, 856 (Colo.2001) (holding that we should not reinterpret statutory language which has remained unchanged since our previous interpretation; any such change should be made by the General Assembly).

### B. Cost Recovery Provisions of the Restitution Statute

¶ 8 The authority of a trial court to order restitution in a criminal case for recovery of a victim's costs resides in the provisions of sections 18–1.3–601 to –603, C.R.S. (2011). This statute defines "restitution" as "any pecuniary loss suffered by a victim ... proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18–1.3–602(3)(a). "Victim" means "any person aggrieved by the conduct of an offender." § 18–1.3–602(4)(a).[2]

¶ 9 In *Dubois v. People*, 211 P.3d 41 (Colo. 2009), we examined whether a governmental agency could recover its costs under the provisions of the restitution statute. The question was whether a police officer and Alamosa County were "victims" entitled to restitution within the meaning of the statute. *Id.* at 42. In that case, the defendant pled guilty to vehicular eluding to avoid apprehension by a police officer. During the car chase, one of the responding police officers was involved in a collision resulting in destruction of her patrol car and injuries to her. *Id.*

¶ 10 We held that the police officer was entitled to recover $171.92 for personal losses and Alamosa County was entitled to recover $22,509.23 for loss of the patrol car because the essential elements of the underlying offense of vehicular eluding "require[ ] the primary 'victim' to be a peace officer" and "require[ ] the use of a vehicle." *Id.* at 46. Because the crime requires use of a vehicle, it was "reasonably foreseeable that other peace officers would respond by driving to the scene of the crime and might sustain injuries from a vehicular accident while responding." *Id.*

¶ 11 In regard to the general question of governmental agency recovery of costs it expends in carrying out its statutory responsibilities, we held that the facts of *Dubois* presented a "discrete scenario" with a "rela-

---

**2.** The definition of "victim" includes a non-exhaustive list of examples, none of which is relevant in this case. *See* § 18–1.3–602(4)(a)(I)–(VI).

tively unique set of circumstances" and that "the language 'aggrieved by the conduct of an offender' is not limitless in its reach and was not intended to include the ordinary expenses of law enforcement." *Id.* at 46–47. Thus, we focused our analysis on the wrongful conduct defined as an element in the underlying criminal offense and whether the person or agency claiming restitution is "aggrieved" by the conduct of the defendant. We emphasized that "with no direct guidance" from the general assembly "we hold that typically the legislature must specifically include law enforcement costs within the restitution statute for them to be eligible for an award of restitution." *Id.* at 46. When the governmental agency seeking cost recovery through the restitution statute does not fall within the defining scope of the underlying criminal statute as a primary victim, the legislature must specifically enumerate the sought-for agency costs within the restitution statute for them to be eligible for an award of restitution. *Id.*

¶ 12 We contrasted the injuries suffered by the police officer and Alamosa County with the costs expended by a government agency for purposes of remediating a site used for the production of a controlled substance, noting that sections 18–1.3–602(3)(c)(I)(A) and (4)(a)(VI) specifically allow a government agency to recover funds expended for that purpose. In response to concerns that holding the police officer and Alamosa County to be "victims" rendered those provisions superfluous, we stated that the police officer and county were "aggrieved by" vehicular eluding; therefore, they were "victims" under the statute. *Id.* at 45. By contrast, the "government agency is not 'aggrieved by' the production of a controlled substance or by having to clean it up. Rather, those costs are suffered because any site used for such purposes must be remediated to make it habitable by members of the real class of 'victims' of such an activity, namely the public at large." *Id.* at 47. Thus, "costs incurred by a government agency charged with such a task are suffered on behalf of the public. As such, [the] express legislative pronouncement that such costs are to be included for purposes of restitution was necessary." *Id.*

¶ 13 The legislature has provided several other such pronouncements. Sections 18–1.3–602(3)(c)(I)(B)–(C) and –602(4)(a)(VI) state that a government agency (or private entity) may recover funds expended to store, preserve, or test evidence of a controlled substance violation; and to sell and provide for the care of and provision for an animal disposed of under the animal cruelty laws. Additionally, victim compensation boards, which are sometimes government agencies, are expressly allowed to recover funds they expend to pay victim compensation claims. § 18–1.3–602(4)(a)(IV).

¶ 14 *Dubois* thus articulated a general rule that governmental agency expenses are not typically eligible for recovery under the restitution statute absent an express legislative provision authorizing them, unless the underlying criminal statute encompasses the agency as a primary victim. *Dubois* presented a factual scenario of a discrete exception to this general principle, in light of (1) the nature of the underlying crime; and (2) the fact that the law enforcement agency was the primary victim of the offense charged.

### C. Application to this Case

¶ 15 The governmental agency in this case, DHS, argues that the proper test to determine the circumstances under which law enforcement or other governmental agencies fall within the general meaning of "victim" is whether the harm suffered by the victim was reasonably foreseeable and proximately caused by the conduct of the offender. DHS contends that it is entitled to restitution based on Padilla–Lopez's conviction for child abuse and subsequent placement of her children in foster care. Padilla–Lopez argues that DHS cannot be a victim because it is not aggrieved by the crime of child abuse.

¶ 16 To decide this matter, we first turn to the definition of "victim:" a person "aggrieved by the conduct of an offender." § 18–1.3–602(4)(a). Black's Law Dictionary defines "aggrieved" as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights." Black's Law Dictionary 77 (9th ed. 2009). In *Dubois,* we concluded that a sheriff and the county sheriff's department were "victims"

within the meaning of the restitution statute because the underlying crime defined a peace officer as the victim and included use of a vehicle. 211 P.3d at 46. Thus, the expenses claimed by the officer for personal losses and the county for loss of the police car were incurred by a person and a public agency aggrieved by the defendant's wrongful conduct. *Id.* We also held that ordinary law enforcement expenses are typically not recoverable as restitution absent express inclusion by the legislature. *Id.*

¶ 17 By contrast, the underlying crime in this case is child abuse. § 18–6–401, C.R.S. (2011). Under the child abuse statute, DHS is not a victim. Rather, the victim defined by the statute is the child. A person commits child abuse if such person "causes injury to a child's life or health, or permits a child to be unreasonably placed in a situation that poses a threat of injury to the child's life or health." § 18–6–401(1)(a), C.R.S. (2011). The child abuse statute does not endow DHS with "legal rights" that can be infringed upon by the crime of child abuse. The costs DHS seeks to recover in this case occurred from expenditures made in the course of fulfilling its statutorily mandated function to provide "necessary shelter, sustenance, and guidance" to dependent and neglected children. *See* §§ 26–1–201(1)(f), C.R.S. (2011); 26–5–101(3), C.R.S. (2011). The fact that DHS expended these funds does not infringe upon its legal rights or make it aggrieved by Padilla–Lopez's conduct.[3] Thus, under our construction of the statute in *Dubois*, which is controlling, there must be an express legislative pronouncement covering the restitution sought for such costs. *See Martin*, 27 P.3d at 856 (holding that this court will not reinterpret statutory language which has remained unchanged since our prior interpretation). No such statutory provision exists here.

¶ 18 The term "victim" is limited by the definition of "aggrieved" to those whose legal rights have been infringed by the offender's conduct. Absent express legislative direction to the contrary, we decline to expand the definition of the word "victim" to include governmental agencies whose legal rights have not been adversely affected by the conduct of the offender simply because the offender's conduct caused them to spend money allocated to them in order to fulfill their public function.

¶ 19 In *Dubois*, we drew a similar distinction between the harm suffered by the police officer and Alamosa County as a result of vehicular eluding, and the harm suffered by a publicly funded governmental agency which pays to remediate a site contaminated by the production of a controlled substance. In the former instance, we held that a peace officer and the county which paid for her vehicle were "aggrieved" by the defendant's conduct and thus were victims of the underlying crime. *Dubois*, 211 P.3d at 46–47. Conversely, we concluded that a government agency is not "aggrieved by" the production of a controlled substance or by having to clean it up. Instead, the agency expends funds because "any site used for such purposes must be remediated to make it habitable by members of the real class of 'victims' of such an activity, namely the public at large." *Id.* at 47. As such, the legislature's express pronouncements in sections 18–1.3–602(3)(c) and –602(4)(a)(VI) were necessary to make such costs recoverable.

¶ 20 Here, the crime of child abuse does not contain any element referring to wrongful conduct against DHS. The district court's order for restitution erroneously failed to address the provision of section 18–1.3–602(4)(a) defining "victim" as a person "aggrieved by the conduct of an offender." Instead, the trial court focused only on the "proximately caused" language of section 18–1.3–602(3)(a), describing "restitution." Following our logic in *Dubois*, as well as the definition of "aggrieved," DHS as an entity is not "aggrieved" by the crime of child abuse or by having to provide foster care and counseling. Rather, those costs are suffered by

---

**3.** We note that where DHS's legal rights have been infringed by the conduct of an offender, e.g., in cases of welfare fraud, food stamp theft, or vandalism to its building, DHS would be considered a victim for purposes of the restitution statute. *See, e.g., Valenzuela v. People*, 893 P.2d 97, 101 (Colo.1995) (finding Department of Social Services a victim of welfare fraud because it was required to reimburse the government for fraudulently obtained food stamps).

DHS because of DHS's statutory duty to provide "necessary shelter, sustenance, and guidance" to dependent and neglected children. §§ 26–1–201(1)(f); 26–5–101(3). The costs incurred by DHS as a result of the abuse are expended on behalf of the public for the children, who require care and counseling due to their trauma. *See Dubois*, 211 P.3d at 47. An express legislative provision is necessary for such costs to be included for purposes of criminal case restitution. *Id.* No such pronouncement exists for DHS's costs of providing foster care, including psychological counseling, to children as a result of child abuse. We therefore conclude that, under these circumstances, DHS is not a "victim" within the meaning of the restitution statute.[4]

## III.

¶ 21 Accordingly, we affirm the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

Justice EID dissents, and Justice COATS and Justice BOATRIGHT join in the dissent.

Justice EID, dissenting.

¶ 22 I object to the majority's opinion for two related reasons. First, the majority reads *Dubois v. People*, 211 P.3d 41 (Colo.2009), so narrowly that restitution could not have been awarded even on the facts of that case. Second, the majority erroneously suggests that its misreading must control here under stare decisis principles. Because the majority essentially eviscerates restitution as a remedy for governmental agencies in Colorado, I respectfully dissent.

¶ 23 The facts of *Dubois* are important. In that case, the defendant was convicted of vehicular eluding for attempting to elude a county deputy named Thompson. When Thompson was in pursuit of the defendant, he called for backup, and another county deputy, Benavidez, responded. On her way to assist Thompson, Benavidez was involved in an accident that "resulted in the total destruction of her patrol car." 211 P.3d at 42. Significantly, restitution was requested by the county and Benavidez, not by the "direct victim" Thompson. *Id.* at 43.

¶ 24 The defendant contended that this fact was fatal to the restitution claim. *Id.* We rejected that argument, however, finding it to be foreclosed by the statutory language at issue in the case. We observed that, while the previous version of the statute had defined "victim" as someone who had been "directly" aggrieved by the offender's conduct, the legislature had excised the "direct" requirement and instead adopted the current, more expansive language — that is, defining "victim" as "*any person* aggrieved by the conduct of an offender." § 18–1.3–602(4)(a), C.R.S. (2011) (emphasis added); *Dubois*, 211 P.3d at 44. We concluded that the statute "no longer limits restitution only to the persons [directly] injured by the conduct alleged as the basis for the conviction." *Dubois*, 211 P.3d at 45. (internal quotation marks and citation omitted). Although we expressed some concern about the "potentially boundless" nature of the new definition of "victim," *id.* at 43, we concluded that both Benavidez and the county fell within it, *id.* at 45.

¶ 25 In this case, the majority reinstates the very "direct victim" test that we expressly rejected in *Dubois*, albeit using different terminology. For example, it repeatedly notes that DHS's restitution claim must fail because the wrongful conduct in this case was directed to the child, not DHS. *See, e.g.*, maj. op. at ¶¶ 1, 20. Yet, as noted above, the vehicular eluding committed by the defendant in *Dubois* was directed at Thompson, not the responding deputy or the county. Analytically, DHS is in the same position as the responding deputy in *Dubois*, as they both provided assistance to the victim in response to the defendant's conduct. Indeed, under the majority's analysis, the responding deputy and the county would not have been permitted to recover in *Dubois*. In the end, in its effort to severely restrict restitution claims by government entities, the majority *sub silentio* overturns *Dubois* itself.

---

4. Section 19–1–115(4)(d), C.R.S. (2011), is a provision for recoupment of foster placement costs from parents in a dependency and neglect proceeding based on their ability to pay. Application of that provision to recoup costs from Padilla–Lopez is not before us in this case.

¶ 26 The majority then suggests that it is compelled to reject DHS's restitution claim because it is bound, under principles of stare decisis, to follow *Dubois*. Maj. op. at ¶¶ 7, 17. But in fact only its own misreading of *Dubois* compels it to rule the way it does. Moreover, *Dubois* itself did not purport to set forth a definitive construction of the outer boundaries of the statute. Instead, the court observed that "we find this statutory language [defining "victim" as "any person aggrieved by the conduct of the offender"] *unclear* because it is potentially boundless"; after declining to define the outer boundaries of the statute, we concluded that the county and the responding deputy fell within the definition of "victim." 211 P.3d at 43 (emphasis added); *see also id.* at 45 ("although the statutory language remains *somewhat unclear*, we find that [the responding deputy and the county] fall within [it]") (emphasis added); *id.* at 46 (noting that the definition of victim "is not limitless in its reach"). In sum, *Dubois* did not purport to define the outer boundaries of government agency "victims," but simply held that, "[u]nder the[ ] facts," the county and responding deputy qualified as such. *Id.* at 46. Thus, the majority says it is bound by a construction of the statute that *Dubois* expressly declined to make.

¶ 27 *Dubois* did, of course, point to some guideposts in determining what government entities would fall within the definition of victim. First, we referenced the fact that the term "restitution" is defined in the statute as "pecuniary loss suffered by a victim *... proximately caused by an offender's conduct ....*" 18–1.3–602(3)(a) (emphasis added). We noted that "the requirement of proximate cause ... serves to limit the ambit of potential restitution awards." 211 P.3d at 45. As the district court found, the requirement of proximate cause is met in this case. As in *Dubois*, where it was "reasonably foreseeable that other peace officers would respond by driving to the scene of the crime and might sustain injuries from a vehicular accident while responding," *id.* at 46, it was reasonably foreseeable in this case that children who were the victims of child abuse could need specialized in-home therapy to help them recover from the abuse.

¶ 28 We also observed that *"typically* the legislature must specifically include law enforcement costs within the restitution statute for them to be eligible for an award of restitution." *Id.* at 46 (emphasis added). But we departed from that "typical" situation in *Dubois*, based on the fact that the crime of vehicular eluding identified a peace officer as the victim (in that case, Thompson), and the fact that it was reasonably foreseeable that Benavidez would respond to Thompson's call for backup. *Id.* Significantly, we did not impose, as the majority seems to do today, an across-the-board requirement that the legislature expressly identify a government agency as victim before it may be considered a "victim" under section 18–1.3–602(4)(a). *See, e.g.*, maj. op. at ¶¶ 17, 18, 20. Nor could we. As we observed in *Dubois*, the statute defines "victim" in expansive terms to include *"any person* aggrieved by the conduct of an offender," subject only to the limits of "proximate cause." 211 P.3d at 43, 45 (emphasis added). Moreover, again as we noted in *Dubois*, the legislature has instructed that the restitution statute be "liberally construed." *Id.* at 46 (citing 18–1.3–601(2), C.R.S. (2011)). Given the expansive language the legislature has already adopted, it is not for us to impose a clear statement principle that requires the legislature to expressly identify every instance in which a government agency may be eligible for restitution.

¶ 29 In the end, we determined in *Dubois* that the definition of victim "is not limitless" (although we declined to set an outer limit), and that the statute "was not intended to include *the ordinary expenses of law enforcement.*" *Id.* (emphasis added). But that is not what DHS seeks in this case. The general statute governing DHS in essence defines the "ordinary" expenses of the department by permitting it to recover from the parent, according to the parent's ability to pay, the costs of foster care placement for the child. § 19–1–115(4)(d), C.R.S. (2011). But here, DHS seeks to recover in restitution costs not covered by foster care reimbursement — that is, extraordinary costs of in-home therapy required by the severity of the abuse the children suffered due to defen-

dant's conduct. At oral argument, DHS maintained that it was only seeking restitution for the extraordinary costs of in-home therapy; the defendant maintained that ordinary costs were included in the restitution order. I would remand the case to the district court to ensure that only the extraordinary costs of in-home therapy were included in the restitution order. Because the majority would simply hold that restitution is not available for any DHS cost as a matter of law, I respectfully dissent from its opinion.

I am authorized to state that Justice COATS and Justice BOATRIGHT join in this dissent.