2012 COA 133

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Michael J. McCARTHY, Defendant–Appellant.**

**No. 09CA2710.**

Colorado Court of Appeals, Div. II.

Aug. 16, 2012.

John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State

Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.*

¶ 1 Defendant, Michael J. McCarthy, appeals the trial court's order concluding that the Colorado Department of Health Care Policy and Financing (the Department)[1] is a victim for purposes of the criminal restitution statute and granting restitution to the Department for costs incurred as a result of defendant's vehicular assault. We reverse and remand.

¶ 2 Here, defendant, while driving under the influence, ran a red light and struck another car, causing seriously bodily damage to two of that car's passengers. Defendant pled guilty to vehicular assault, § 18–3–205(1)(b), C.R.S.2011, and leaving the scene of an accident, § 42–4–1602, C.R.S.2011. He was sentenced to five years in the Department of Corrections and three years of mandatory parole.

¶ 3 The court held eight hearings relating to restitution, which culminated in an order requiring that defendant pay $29,000 to one of the victims and $1515.18 to his caregiver. The trial court also ordered that defendant pay $417,750 to the Department for Medicaid disability benefits paid to a rehabilitation hospital on one of the victim's behalf. Defendant only appeals the portion of the order awarding restitution to the Department.

## I. The Department Is Not a "Victim"

¶ 4 Defendant argues that the Department does not qualify as a victim for purposes of the restitution statute because (1) the legislature did not specifically include the Department as a victim in the enumerated examples in the restitution statute and (2) the elements of the vehicular assault offense in this case do not establish the Department as a victim. Based on recent case law, we agree.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.

1. Both parties and the trial court referred to the alleged victim in this case as Medicaid. However-

er, Medicaid is a joint federal-state program administered by the Colorado Department of Health Care Policy and Financing (the Department), and, therefore, the proper alleged victim is the Department.

## II. Standard of Review

¶ 5 A trial court has broad discretion to determine the terms and conditions of a restitution order. We reverse its ruling only on a showing of an abuse of discretion. *People v. Reyes*, 166 P.3d 301, 302 (Colo.App. 2007).

¶ 6 However, we subject issues of law, such as statutory interpretation of the criminal restitution statute, to de novo review. *Dubois v. People*, 211 P.3d 41, 43 (Colo.2009). In construing a statute, our aim is to ascertain and give effect to the intent of the legislature. *Robles v. People*, 811 P.2d 804, 806 (Colo.1991). We read the statute as a whole and interpret it to give consistent, harmonious, and sensible effect to all its parts. *People in Interest of C.C.V.*, 56 P.3d 1216, 1217 (Colo.App.2002). If the language is clear, it is not necessary to resort to other rules of statutory interpretation. *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo.1990). If the language is not clear, resorting to the rules of statutory interpretation is appropriate. *See id.*

## III. Law

¶ 7 Section 18–1.3–603(1), C.R.S.2011, requires that "[e]very order of conviction of a felony ... shall include consideration of restitution." Courts broadly construe the restitution statute to accomplish the goal of making victims whole for the harms suffered as a result of a defendant's criminal conduct. *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App.2010).

¶ 8 "Restitution" is defined as "any pecuniary loss suffered by a victim ... [that is] proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18–1.3–602(3)(a), C.R.S.2011; *see People v. Lassek*, 122 P.3d 1029, 1034 (Colo.App.2005). Medical expenses are commonly included in restitution awards. *See, e.g., People v. Webb–Johnson*, 113 P.3d 1253, 1254 (Colo.App.2005).

¶ 9 The restitution statute defines "victim" as "any person aggrieved by the conduct of an offender" and then lists six nonexclusive examples of those who qualify as victims. § 18–1.3–602(4)(a)(I)–(VI), C.R.S.2011; *see*

*Dubois*, 211 P.3d at 43–44 (explaining that the definition of "victim" was broadened after the 2000 amendments to the criminal restitution statute). In one of the examples, "victim" means any person who has suffered losses because of a contractual relationship with the primary victim of the crime and thus includes, but is not limited to, an insurer. § 18–1.3–602(4)(a)(III), C.R.S.2011.

¶ 10 Section 18–3–205(1)(a), C.R.S.2011, states that a person commits vehicular assault if the person "operates or drives a motor vehicle in a reckless manner, and this conduct is the proximate cause of serious bodily injury to another." Under the vehicular assault statute, the victim is a human being. *See People v. Lage*, 232 P.3d 138, 143–44 (Colo.App.2009).

¶ 11 In *Dubois*, the Colorado Supreme Court determined that because the statutory definition of "victim" in the restitution statute does not specifically exclude governmental entities, they may be included as "any person." 211 P.3d at 45. However, the *Dubois* court further concluded, without direct guidance from the statute, that a governmental entity qualifies as a victim within the meaning of the restitution statute only if the legislature has included the governmental entity within the definition of "victim" either in the restitution statute or in the statute defining the elements of the underlying crime. *Id.* at 45–46.

¶ 12 The specific question the *Dubois* court addressed was whether a deputy sheriff and Alamosa County were eligible for restitution as victims of the defendant's crime of vehicular eluding. *Id.* at 42. The deputy was injured and the county's patrol car was destroyed when the deputy was involved in a single-car crash while responding to the vehicular eluding call. *Id.* The supreme court determined that while typically the legislature must specifically include law enforcement costs within the restitution statute, in this discrete scenario the deputy sheriff and Alamosa County fell within the general meaning of the term "victim" because of the elements of the underlying crime. *Id.* at 45. Specifically, because essential elements of the underlying crime of eluding require that the offender use a vehicle and that the victim

be a peace officer, it was reasonably foresee-able that police officers would respond by driving to the scene of the crime and might sustain injuries from a vehicular accident while responding to an eluding call. *Id.*

¶ 13 Although the court determined that the deputy sheriff and the county could receive restitution under the facts of that case, the *Dubois* holding was extremely narrow.

¶ 14 The Colorado Supreme Court subsequently addressed whether the Department of Human Services (DHS) was a victim within the meaning of the restitution statute in *People v. Padilla–Lopez,* noting that the nature of the underlying crime was different from that in *Dubois.* 2012 CO 49, ¶ 17, 279 P.3d 651.

¶ 15 In *Padilla–Lopez,* the prosecution sought restitution to reimburse DHS for the care of the defendant's children after she was convicted of child abuse and drug possession. *Id.* at ¶ 1. The supreme court determined that DHS was not expressly included the restitution statute. Nor, the court found, would the underlying crime establish a right to restitution, since an essential element of the underlying crime of child abuse was wrongful conduct against a child and the governmental entity requesting reimbursement was not aggrieved by the defendant's conduct. *Id.* at ¶¶ 1–2.

## IV. Application

¶ 16 Here, relying on *Dubois,* 211 P.3d at 45, in its restitution order, the trial court concluded that the Department was not included in any of the enumerated examples of victims within the restitution statute and that the Department was not entitled to restitution based on a contractual relationship.

¶ 17 However, the trial court determined that, as in *Dubois,* the definition of "victim" in section 18–1.3–602(4)(a) is broad enough to encompass any person or entity, such as the Department, aggrieved by defendant's conduct. The trial court further concluded that defendant pled guilty to vehicular assault, which requires serious bodily injury to a victim, and that the Department suffered a financial loss when it was required to pay Medicaid disability benefits to one of the victims because of his serious bodily injuries. Finally, the trial court determined that it was reasonably foreseeable that the person injured by defendant's vehicular assault would qualify for Medicaid. Based on these interpretations of the restitution statute, the trial court ordered defendant to pay restitution to the Department in the amount of $417,750.

¶ 18 Neither the trial court in its restitution order nor the People in their briefing had the benefit of the supreme court's *Padilla–Lopez* decision. However, before us, defendant argues that based upon the reasoning of both *Dubois* and *Padilla–Lopez,* the trial court erred when it determined that the Department could qualify as a victim for purposes of the criminal restitution statute given the nature of the underlying crime in this case.

¶ 19 Specifically, defendant argues that the Department was not "aggrieved" by his vehicular assault when it expended "ordinary expenses" to perform its statutorily mandated function. This is so, he argues, because the Department has not been expressly identified by the legislature as a victim in the restitution statute, nor does the particular nature of the crime establish a right to restitution as the supreme court found in *Dubois.* *See* § 18–3–205(1)(a) (vehicular assault statute requires seriously bodily injury to another); *Dubois,* 211 P.3d at 46; *see also Lage,* 232 P.3d at 143–44 (under vehicular assault statute, the victim is a human being).

¶ 20 We agree with defendant that under both *Dubois* and *Padilla–Lopez,* the supreme court's interpretation of the criminal restitution statute does not allow for reimbursement to the Department in this case. We are bound by our supreme court's case law, and the People have not sufficiently distinguished this case from the supreme court's previous interpretations of the criminal restitution statute to warrant a different conclusion. *See Home Ins. Co. v. Taylor,* 94 Colo. 446, 450, 32 P.2d 183, 185 (1934) (the decisions of the Colorado Supreme Court are paramount and controlling over the intermediate appellate court).

¶ 21 The People mistakenly argue that *Gorman v. Tucker,* 961 P.2d 1126, 1128 (Colo. 1998), implies that the Department is a vic-

tim for purposes of the criminal restitution statute. However, contrary to the People's argument, *Gorman* only indicates that by statute the Department has an independent civil right to recover medical benefits paid to a recipient for which a third party can be held liable. *See* § 26–4–403, C.R.S.2011. The opinion does not address the criminal restitution statute.

¶ 22 Despite this, the People insist that because the Department has a civil statutory right to recover Medicaid benefits paid to recipients, there is no reason why it cannot recover criminal restitution to reimburse state and federal Medicaid funds. Contrary to the People's argument, the Department cannot recover restitution here, because the criminal restitution statute does not specifically indicate the legislature's intent to identify the Department as a victim, nor does the underlying crime apply to it, unlike in *Dubois*. *See McKinney*, 801 P.2d at 509 (when statutory language is not clear resorting to tools of statutory construction is appropriate). Here, this section of the restitution statute was found to be unclear, and the supreme court indicated that the statute did not provide "direct guidance" on the issue. *Dubois*, 211 P.3d at 45.

¶ 23 But, as previously noted, in both *Dubois*, 211 P.3d at 45, and *Padilla–Lopez*, at ¶¶ 1–2, the supreme court determined that for a governmental entity, such as a police department or DHS, to qualify as a victim who can recover restitution, it must be specifically included by the legislature within the enumerated examples listed in the restitution statute, unless the underlying crime specifically identifies the governmental entity as a victim.

¶ 24 The People also imply that in this case the Department acted as a type of "insurer" and that under the broader understanding of the term "victim," the Department should have a right to recover. We disagree.

¶ 25 Section 18–1.3–602(4)(a)(III) defines a "victim" as a "person who has suffered a loss because of a contractual relationship with" a person who is entitled to restitution. This definition includes an insurer, but the trigger for this type of restitution claim is the contractual relationship with a person who is entitled to restitution from the defendant.

¶ 26 In its restitution order, the trial court found there was no contractual relationship between the victim and the Department and therefore Medicaid was not entitled to restitution on that basis. We agree with the trial court. Because there is no evidence before us indicating a prior contractual relationship between the Department and the victim, the Department cannot qualify as a victim pursuant to section 18–1.3–602(4)(a)(III).

¶ 27 Thus, based on the supreme court's interpretations of the restitution statute in *Dubois* and *Padilla–Lopez*, we conclude that the Department cannot recover restitution in this case.

¶ 28 The restitution order is reversed, and the case is remanded to the trial court with directions to modify the order so that it excludes the grant of $417,750 in restitution to the Department.

Judge GRAHAM and Judge WEBB concur.