24CA1627 Peo v Critchley 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1627
Arapahoe County District Court No. 23CR1785
Honorable Eric B. White, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christan Page Critchley,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina C. Litow, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Christan Page Critchley, appeals the district court's order requiring her to pay $8,700 in restitution for the Federal Pandemic Unemployment Compensation (FPUC) payments she received from the Colorado Department of Labor and Employment (CDLE).  We affirm.

## I.    Background

¶ 2    Between March 2020 and June 2021,[1] Critchley periodically provided false information to the CDLE by claiming unemployment and reporting no income.  During that time, Critchley collected unemployment compensation benefits from the CDLE, including funds from FPUC, while simultaneously earning income from multiple jobs.  Following an audit and investigation, the CDLE determined that Critchley had fraudulently received overpayments totaling $24,264.

¶ 3    Based on this conduct, Critchley was charged with theft in the amount of $20,000-$100,000 and cybercrime.  The CDLE was identified as the victim of the theft charge.  The prosecution later

---

[1] While Critchley provided false information through June 2021, the CDLE did not distribute funds to Critchley after March 2021.

amended the complaint to add two counts of filing a false tax return.

¶ 4    Critchley agreed to plead guilty to an added misdemeanor count of making a false statement to obtain unemployment benefits, under section 8-81-101(1)(a), C.R.S. 2025, in exchange for dismissal of the remaining counts.  The plea agreement provided:

> Defendant is obligated to pay restitution as defined in [section] 18-1.3-602[, C.R.S. 2025]. The defendant admits to liability, stipulates to causation, and agrees to pay restitution for all pecuniary losses suffered by all victims for all charged counts, even those dismissed as part of this plea agreement.  Pursuant to [section] 18-1.3-603(1)(b), [C.R.S. 2025,] defendant stipulates to pay restitution in the preliminary amount of $2859 and the defendant waives objection to the court entering a preliminary order that the defendant is obligated to pay restitution including the stipulated amount and waives objection to the final amount of restitution being determined within 91 days following the order of conviction.

¶ 5    The prosecution sought $2,859 in restitution payable to the Colorado Department of Revenue.  Later, the prosecution requested an additional $24,264 in restitution payable to the CDLE.

¶ 6    Critchley objected and requested a hearing to determine whether the additional $24,264 amount was true and correct.

2

¶ 7    At the restitution hearing, the prosecution called Miranda Kerns, a criminal investigator with the CDLE.  Kerns testified that the FPUC payments Critchley received were funded by the federal government but distributed through the CDLE.  She further said that the CDLE could use the federal funds only for FPUC payments.  Critchley argued that any FPUC payments she received represented a loss incurred by the federal government, not by the CDLE.  Specifically, Critchley argued:

> [T]his is the federal government's actual loss at that point, and something that would need to be paid back to the federal government, that was not requested by the federal government.  The federal government has not filed any claim for restitution, so I would argue that that cannot be ordered as well.

¶ 8    The prosecution countered that Critchley fraudulently accepted the benefits from the CDLE, including the FPUC payments, and that both types of benefits were paid through the Colorado government.

¶ 9    The district court ruled as follows:

> The Court does find the State of Colorado to be a victim.  The testimony that the Court has regarding these FPUC funds is that there were monies made available to those who were unemployed during the pandemic to be paid

out through the State of Colorado as – along with unemployment compensation benefits.

So if I understand the testimony correctly, essentially this was an extra benefit the federal government was offering during the pandemic for those that were unemployed. If I, again, correctly understand the testimony, it sounds like there was some unknown accounting mechanism where these funds were made available to Colorado through the federal government, and then paid out by Colorado for those folks seeking unemployment. Here, that was Ms. Critchley.

Again, it's clear that the People are seeking restitution for that loss. In other words, the State of Colorado paid out, in addition to the $384 a month unemployment compensation benefit, this FPUC benefit as part of its payment, essentially subsidized by the federal government.

I don't have any testimony that the – the State would've paid an additional $600 had the federal government not made that money available. In other words, this is money made available to the State of Colorado to pay claimants during the pandemic.

So I don't know exactly what may happen with reimbursed monies that were wrongfully paid. I don't know what pot that may go back into. I don't know if the State of Colorado, then, essentially is able to keep that money as money wrongfully paid and reimbursed to it, or if somehow, there's a mechanism for the federal government to be reimbursed for that loss that it suffered, if this is ultimately

4

> returnable to the federal government, and I just – I don't know.
>
> The bottom line, is that it is a wrongful loss suffered by the government at the hands of [Ms. Critchley]. She wrongfully received unemployment benefits that included FPUC monies, and that she shouldn't have gotten. And it's money that the State of Colorado or the federal government, in paying the State of Colorado federal funds, is out and it's wrongfully out.
>
> . . . .
>
> So the Court will find that the FPUC funds that were distributed wrongfully are restitution and shall be reimbursed as part of restitution here by the victim to the State of Colorado.

¶ 10    On appeal, Critchley contends that the FPUC funds cannot be ordered to be paid back to the CDLE because the CDLE does not qualify as a victim under section 18-1.3-602(4)(a) and did not suffer a pecuniary loss under section 18-1.3-602(3)(a). We disagree.

## II.    Restitution

### A.    Standard of Review and Applicable Law

¶ 11    We review de novo the interpretation of a statute. *See Dubois v. People*, 211 P.3d 41, 43 (Colo. 2009). We endeavor to interpret statutes "in strict accordance with the General Assembly's purpose and intent in enacting them." *In re 2000-2001 Dist. Grand Jury*, 97

5

P.3d 921, 924 (Colo. 2004). To determine that intent, we first look to the statute's plain language, and when that language is clear, we must apply the statute as written. *Martin v. People*, 27 P.3d 846, 851 (Colo. 2001).

¶ 12 Under the Restitution Act, convicted offenders are required to pay restitution to compensate crime victims for the harm they have suffered. §§ 18-1.3-601 to -603, C.R.S. 2025. "Restitution" is defined as "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a). "Victim," in turn, "means any person aggrieved by the conduct of an offender and includes . . . [a]ny person harmed by an offender's criminal conduct in the course of a scheme, conspiracy, or pattern of criminal activity." § 18-1.3-602(4)(a)(II). A governmental agency is considered a "person" for purposes of the restitution statute. *People v. Oliver*, 2016 COA 180M, ¶ 26; *see also* § 2-4-401(8), C.R.S. 2025 ("Person" includes "any . . . government or governmental . . . agency."). And a person is "aggrieved" if the person has "legal rights that are adversely affected." *People v.*

*Padilla-Lopez*, 2012 CO 49, ¶ 16 (quoting Black's Law Dictionary 77 (9th ed. 2009)).

¶ 13     The Coronavirus Economic Stabilization (CARES) Act established FPUC. 15 U.S.C. § 9023. FPUC provided additional federal financial assistance and distributed funds through agreements with participating states. 15 U.S.C. § 9023(a)-(b). The program provided an additional $600 per week to individuals receiving unemployment compensation between the weeks of March 27, 2020, and July 31, 2020. 15 U.S.C. § 9023(b)(3)(A).

¶ 14     The "Repayment" section of the statute provides:

> In the case of individuals who have received amounts of [FPUC benefits] . . . to which they were not entitled, the State shall require such individuals to repay the amounts of such [FPUC benefits] . . . to the State agency . . . in accordance with the same procedures as apply to the recovery of overpayments of regular unemployment benefits paid by the State.

15 U.S.C. § 9023(f)(2)-(3).

## B. Analysis

¶ 15     We conclude the CDLE qualifies as a victim because it was "aggrieved" by Critchley's actions. § 18-1.3-602(4)(a). The CDLE received federal funds to distribute as FPUC benefits to eligible

claimants. 15 U.S.C. § 9023(d)(1)(A). Once the federal government transferred the funds, the CDLE had a legal right to distribute those funds according to the CARES Act. *See id.* Critchley's fraudulent conduct directly impaired the CDLE's right to allocate these funds to eligible claimants. *See People v. Welliver*, 2012 COA 44, ¶¶ 5, 20 (noting that Colorado courts have awarded restitution to the CDLE for unemployment benefit overpayments due to fraud).

¶ 16　　Further, by fraudulently obtaining the FPUC funds disbursed through the CDLE, Critchley caused the CDLE to suffer a pecuniary loss. As previously discussed, once the federal government transferred the FPUC funds to the CDLE, the CDLE acquired the legal right to those funds. Therefore, the CDLE was unable to use the FPUC funding for its intended purposes under the CARES Act.

¶ 17　　Moreover, the CARES Act specifically requires states to seek repayment from those individuals who receive FPUC benefits to which they are not entitled. Repayment must be made "to the State agency . . . in accordance with the same procedures as apply to the recovery of overpayments of regular unemployment benefits paid by the State." 15 U.S.C. § 9023(f)(2)-(3).

¶ 18     Accordingly, we conclude the court correctly ordered Critchley to pay restitution for the $8,700 in FPUC compensation she received from the CDLE.

## III.   Disposition

¶ 19     The order is affirmed.

JUDGE PAWAR and JUDGE YUN concur.