The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 20, 2018

## 2018COA138

**No. 17CA0130 People in Interest of A.V. — Juvenile Court — Delinquency — Sentencing — Restitution**

In this juvenile restitution case, a division of the court of appeals interprets the juvenile restitution statute, section 19-2-918, C.R.S. 2018, to conclude that a court does not need to consider or make findings concerning whether the total restitution amount would cause "serious hardship or injustice" to the juvenile, contrary to the holding in *People in Interest of A.R.M.*, 832 P.2d 1093, 1096 (Colo. App. 1992), where another division of this court interpreted an earlier version of the statute which specifically permitted consideration of "serious hardship or injustice."

The division further concludes that the juvenile waived his causation argument as to the dismissed arson count, and that the invoices submitted with a victim impact statement constituted

sufficient evidence to support the restitution ordered for that victim.

The restitution orders are affirmed.

COLORADO COURT OF APPEALS        **2018COA138**

Court of Appeals No. 17CA0130
Weld County District Court Nos. 16JD123, 16JD124 & 16JD141
Honorable Randall C. Lococo, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.V.,

Juvenile-Appellant.

ORDERS AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Terry and Navarro, JJ., concur

Announced September 20, 2018

Cynthia H. Coffman, Attorney General, Christine C. Brady, Senior Assistant
Attorney General, Denver, Colorado, for Petitioner-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Denver, Colorado, for Juvenile-
Appellant

¶ 1    A.V., a juvenile, appeals the juvenile court's restitution orders stemming from a global disposition of several different cases. He challenges causation and estimated costs in the burglary of the Country Inn Restaurant, the sufficiency of the evidence in a dismissed count for burglary of the Animal Attractions Pet Store, and the absence of specific reasonableness findings concerning total restitution. We reject his contentions as to the Country Inn restitution orders and conclude that he waived his causation argument. We affirm the Animal Attractions order because the record supports the court's findings. As a matter of first impression, in Part V of this opinion, we interpret the juvenile restitution statute and conclude that amendments occurring in 1996 and 2000, removing the language on which A.V. relies, no longer require the juvenile court to make specific reasonableness findings before imposing restitution. Therefore, we affirm the court's restitution orders.

## I.    Background

¶ 2    In early 2016, a series of home and business burglaries occurred in Greeley. They all occurred in the same general location, at night, and several were accomplished by breaking a back door or

window.  The victim businesses included Boost Mobile Cellular, Blue Mug Coffee, Taste of Philly, Animal Attractions Pet Store, CG Vapors, and the Country Inn Restaurant.  The Country Inn also sustained extensive fire damage in the burglary, and the fire destroyed most of the business.

¶ 3     Police apprehended A.V. and an accomplice fleeing from one of the home burglaries.  The accomplice confessed and implicated A.V. When questioned, A.V. admitted being in the backyard of the home during the burglary and provided details of other burglaries in the same general area.  In particular, he described the burglaries of Taste of Philly, Blue Mug Coffee, Animal Attractions, Country Inn, and CG Vapors.  He also possessed a lizard from Animal Attractions and was wearing shoes whose prints matched shoeprints found at the other burglary scenes.

¶ 4     During a search of A.V.'s home, police recovered a vape pen stolen from CG Vapors, two mobile phones stolen from Boost Mobile, a distinctive backpack and hat that matched those seen on surveillance video from Taste of Philly, and the lizard.  Thereafter, the prosecution charged A.V. in five separate cases: (1) 16JD123 (Taste of Philly); (2) 16JD124 (Country Inn); (3) 16JD141 (home

burglaries); (4) 16JD121 (Animal Attractions and CG Vapors); and (5) 16JD118 (Boost Mobile). A.V. pleaded guilty to one count in 16JD123, one count in 16JD124, and two counts in 16JD141 in exchange for the dismissal of the remaining counts and cases 16JD121 and 16JD118.

¶ 5     As part of this global disposition and as relevant here, A.V. pleaded guilty to second degree burglary of the Country Inn in exchange for the dismissal of the remaining counts, including first degree arson. In the written plea agreement, A.V. stipulated to a factual basis and agreed to pay restitution to the victims of the dismissed counts. Similarly, A.V. pleaded guilty to second degree burglary in the Taste of Philly case in exchange for the dismissal of the remaining counts and the dismissal of the Animal Attractions, CG Vapors, and Boost Mobile cases. He stipulated to a factual basis and agreed to pay restitution to the victims of the dismissed counts and cases in the plea agreement.[1]

---

[1] A.V. similarly resolved other cases, not at issue here, in which he stipulated to a factual basis and restitution for victims of the dismissed counts and dismissed cases.

¶ 6     The prosecution requested $682,600 in restitution for the Country Inn case and $8119.20[2] for the dismissed Animal Attractions case.  Before the restitution hearing began, the prosecutor stated his understanding that A.V.'s stipulation to a factual basis in each case (including the dismissed cases) included and constituted a stipulation to causation.  Defense counsel responded, "I think that's the understanding of how things go here."  Consistent with this understanding, the court took judicial notice of the court files in each case, including the warrantless arrest affidavits.

¶ 7     During argument, A.V. conceded that he owed $470,874.47 (costs incurred to date) in the Country Inn case, which represented the repair and reconstruction expenses resulting from the arson.  He asked the court to order that amount, and contested only the estimated costs of $211,759.53 to complete the repairs.  As to Animal Attractions, the prosecution called no witnesses and relied

---

[2] Taste of Philly and CG Vapors did not request restitution, but A.V. agreed to pay Animal Attractions and Boost Mobile restitution as part of the plea agreement.  Animal Attractions requested $2564.42 and its insurer requested $2938.74.  Boost Mobile and its insurer requested $2616.04.

on invoices submitted to victims' compensation[3] for reimbursement. A.V. argued that these invoices alone were insufficient to establish an amount owed.

¶ 8    In a detailed oral order, the juvenile court concluded that the testimony of Country Inn's owner, the insurer's attorney, and the admitted exhibits established restitution of $1000 to Country Inn's owner for the deductible and $681,600 to Country Inn's insurer for the repair work.  The court found that A.V.'s stipulation to a factual basis, coupled with the similarities between the Country Inn burglary and the other burglaries, showed that "[A.V.]'s conduct more likely than not was the proximate cause of the damage and the claimed injuries at the Country Inn and that of their insurers."

¶ 9    The juvenile court further found that the loss amounts submitted by Animal Attractions and its insurer in the victim impact statements sufficiently established the victims' losses to order restitution in the amount requested.  The court found that A.V.'s conduct proximately caused the claimed losses based on the

---

[3] Section 24-4.1-105, C.R.S. 2018, permits crime victims to apply for compensation from the victim compensation board by submitting documents demonstrating damages.

stipulated factual basis and the judicially noticed information in the affidavits for warrantless arrest.

## II. A.V. Waived His Proximate Cause Challenge

¶ 10 A.V. contends that no facts exist to show that he caused the Country Inn fire and that the prosecution failed to meet its burden of proving proximate cause for these claimed losses. We conclude that under the unique facts of this case, A.V. waived his challenge to proximate cause by (1) stipulating to a factual basis in the plea agreement and at the providency hearing; (2) stipulating to pay restitution to the victims of the dismissed counts (in this case the arson count) in the plea agreement; (3) agreeing with the prosecutor before the restitution hearing that A.V.'s stipulated factual bases in all cases included a stipulation to causation; and (4) asking the court to order $470,874.47 for losses related to the dismissed arson count.

### A. Standard of Review

¶ 11 A.V. admits that he did not challenge proximate cause in the juvenile court, but asserts that sufficiency of the evidence may be raised for the first time on appeal. Relying on section 18-1-409, C.R.S. 2018, and C.A.R. 4, he reasons that because restitution is

6

part of a sentence and because the statute provides a right to directly appeal a sentence — including the sufficiency and the accuracy of the information on which it is based — we should review his claim de novo.

¶ 12    The People respond that A.V. waived this alleged error.  *See People v. Rediger*, 2018 CO 32, ¶ 39.  For this argument, they rely on A.V.'s stipulation to a factual basis in all cases and all counts, including dismissed cases and dismissed counts, his agreement to pay restitution to the victims of dismissed counts, and his request for the court to specifically order $470,874.47 in restitution for the dismissed arson count.  For the reasons described below, we agree with the People.

## B.    Waiver Law

¶ 13    "When a party specifically removes issues from a trial court's consideration, the party has waived those issues and we may not review them on appeal."  *People v. Geisick*, 2016 COA 113, ¶ 16.  A valid waiver requires "that the defendant *intentionally* relinquish[] a *known* right or privilege."  *Rediger*, ¶ 39; *see also People v. Smith*, 2018 CO 33, ¶ 17.  This approach includes fundamental constitutional rights.  *Rediger*, ¶ 39; *People v. Stackhouse*, 2015 CO

7

48, ¶ 8. We must "indulge every reasonable presumption against waiver," *Rediger*, ¶ 39 (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)). Therefore, to determine whether a party has removed an issue from our review, we must examine the conduct (or lack of conduct) by the party within the context of all the circumstances. *People v. Perez-Rodriguez*, 2017 COA 77, ¶ 27 ("To determine whether the statement 'no objection' or even silence should be characterized as either deliberate or inadvertent, it is necessary to consider the objection or silence in the context of its circumstances."). And, because "[w]aiver is accomplished by intent," we focus on whether the right was "known" and whether it was relinquished "intentional[ly]." *Rediger*, ¶ 40 (quoting *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007)). In doing so, we are guided by cases that have decided this issue. *Rediger*, ¶¶ 46-47 (defense counsel stated he had read the instructions and was satisfied with them, and this conduct forfeited rather than waived the instructional error); *Smith*, ¶ 22 (defense counsel's indication that he "accepted" the jury instructions forfeited rather than waived the instructional error); *Stackhouse*, ¶ 17 (defense counsel's failure to object to the known closure of the

courtroom during voir dire waived the issue on appeal); *People v. Allgier*, 2018 COA 122, ¶¶ 4, 28 (defense counsel's statement of "no objection" to the admission of firearms forfeited rather than waived the CRE 403 appellate argument related to the firearms' admission); *People v. Kessler*, 2018 COA 60, ¶ 37 (defense counsel's agreement that the evidence was admissible waived the admissibility issue on appeal); *People v. Tee*, 2018 COA 84, ¶ 4 (where defense counsel affirmatively stated that she was not seeking a mistrial at that time, after two jurors engaged in pre-deliberation discussions, counsel waived rather than forfeited the issue on appeal); *Geisick*, ¶ 20 (defense counsel's argument that the evidence supported lesser non-included offenses forfeited, rather than waived, a sufficiency challenge on appeal); *People v. Tillery*, 231 P.3d 36, 44 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011) (defense counsel's participation in the formulation of an instruction waived the instructional error).

## C.    Analysis

¶ 14    The record in this case reveals that when he entered his plea, A.V. knew he would be responsible for paying restitution to the victims named in the dismissed counts, and in particular the arson

count.  Both he and his attorney signed the written plea agreement in which he stipulated to a factual basis and agreed to pay restitution to the victims of the dismissed counts.  *See McCarty v. People*, 874 P.2d 394, 400 (Colo. 1994) ("[W]here a defendant, as part of a plea agreement, consents to restitution, he cannot later disavow the restitution obligation."); *People v. Quinonez*, 735 P.2d 159, 164 (Colo. 1987) ("Where a defendant agrees to make restitution at the time of entering a plea, he cannot later disavow the agreement on the basis that there was no showing that he had caused the victim's injury."), *superseded by statute on other grounds as stated in Dubois v. People*, 211 P.3d 41, 44 (Colo. 2009).

¶ 15     We are not persuaded by A.V.'s assertion that the stipulated facts related only to the burglary count, to which he pleaded guilty, and not to the dismissed counts.  The language in the plea agreement does not contain this limitation, nor did the court's discussion with him.  Indeed, during the providency hearing, the juvenile court said, "You understand you do not have to plead guilty to anything, you can say not guilty, I didn't do it, or I want my day in court?" and A.V. responded, "Yeah."  Then, before imposing sentence, the court reiterated that "[a]ny victims on dismissed

10

counts in individual cases are included in the plea that was made in each of those cases, specifically on the [Country Inn] case, dismissed counts 2 through 4.  Victims identified there are included in his plea to Count 1."  Neither A.V. nor his attorney expressed any disagreement with this statement or offered to correct it.  *See People v. DiGuglielmo*, 33 P.3d 1248, 1251 (Colo. App. 2001) (explaining that a defendant must request clarification from the court rather than assert on appeal that he or she was confused at the providency hearing); *cf. People v. Randolph*, 852 P.2d 1282, 1283-84 (Colo. App. 1992) (Because the defendant was convicted of theft by receiving, "was not charged with any offense relating to the other property," and the "record is devoid of evidence establishing defendant's involvement in the theft of the personal property," it was error to impose restitution for missing items.).

¶ 16    Still, under our waiver jurisprudence, simply stipulating to a factual basis may be insufficient to waive causation where the issue of causation is not specifically identified or discussed.  *Allgier*, ¶ 10 (proposing six possible explanations for counsel's statement of "no objection").  So we look further.  The record reveals that the prosecutor provided timely notice of the restitution amounts

requested, and A.V. does not claim otherwise.  Indeed, because of the large amount requested in the Country Inn case, defense counsel told the court it was unlikely that she and the prosecutor could reach a resolution without a restitution hearing.

¶ 17 Importantly, at the hearing and before presenting any evidence, the prosecutor clarified his understanding that A.V.'s stipulation to a factual basis *included* a stipulation to causation.  In our view, this clarification and defense counsel's affirmative response that this was also her understanding constituted more than general acquiescence or a failure to object — it established A.V.'s counsel's *knowledge* that causation was an issue that was not being contested (or proved by the prosecution) at the restitution hearing.  *See Kessler*, ¶ 37 (finding that defense counsel's concession that evidence was admissible waived the ability to contest admissibility on appeal).  We can think of no other reason for the prosecutor to raise this issue before the hearing except to clarify the scope of his burden of proof at the hearing.

¶ 18 Finally, any possible question that causation remained an issue was dispelled by defense counsel's concession (i.e., intentional relinquishment) during argument that A.V. owed $470,874.47 for

the arson-related damages and her specific request that the court order restitution in this amount. Counsel never argued that A.V. had not caused the fire and did not otherwise hedge her restitution request based on an objection to paying any restitution. Accordingly, in light of all the circumstances, we conclude that A.V. waived any challenge to causation and that we have nothing to review in that regard.

### III. Estimated Repair Costs are Part of Restitution

¶ 19 A.V. next contends that the juvenile court erroneously ordered him to pay the estimated repair costs to Country Inn's insurer. He argues that this amount is speculative and that he should only be obligated to pay for expenses incurred to date. We disagree.

### A. Standard of Review and Applicable Law

¶ 20 We review a trial court's restitution order for an abuse of discretion. *People v. Henry*, 2018 COA 48M, ¶ 12. A court abuses its discretion when it misconstrues or misapplies the law, or its decision is manifestly arbitrary, unreasonable, or unfair. *Id.* We will not disturb the court's determination of restitution if it is supported by the record. *Id.*

¶ 21    We review and interpret statutes de novo. *People v. Padilla-Lopez*, 2012 CO 49, ¶ 7; *People v. McLain*, 2016 COA 74, ¶ 9. When construing statutes, we aim to ascertain and give effect to the intent of the General Assembly. *Padilla-Lopez*, ¶ 7. We accord words and phrases their plain and ordinary meanings. *Id.* "Where the language is clear, it is not necessary to resort to other tools of statutory construction." *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 17.

¶ 22    Restitution in juvenile cases is governed by the adult restitution statute. *People in Interest of D.I.*, 2015 COA 136, ¶ 9. "Restitution" is "any pecuniary loss suffered by a victim," including but not limited to certain enumerated types of losses "and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2018.

¶ 23    Offenders are required to pay "full restitution" to victims harmed by their misconduct. § 18-1.3-601(1)(b), C.R.S. 2018. This includes recovery of the actual pecuniary loss suffered by the victim as a direct result of the defendant's conduct, including "anticipated future expenses." *See* § 18-1.3-602(3)(a). One purpose of

restitution is to make the victim whole to the extent practicable. *People v. Courtney*, 868 P.2d 1126, 1128 (Colo. App. 1993). Other purposes include rehabilitation, deterring future criminality, and reducing the financial burden on victims and their families, as well as compensating them for their losses. § 18-1.3-601(1)(c)-(g). The restitution statute must be liberally construed to accomplish these goals. § 18-1.3-601(2).

¶ 24 A court bases its restitution order on information provided by the prosecuting attorney. § 18-1.3-603(2), C.R.S. 2018. The prosecution bears the burden of proving the amount of restitution owed by a preponderance of the evidence. *People v. Vasseur*, 2016 COA 107, ¶ 15. The defendant must have the opportunity to contest the amount of the victim's loss, but the court need not "conduct a mini-trial on the issue of damages." *People v. Johnson*, 780 P.2d 504, 507 (Colo. 1989); *accord Vasseur*, ¶ 15. More than speculation is required for a defendant to bear responsibility for a victim's loss. *People v. Stafford*, 93 P.3d 572, 576 (Colo. App. 2004). But the prosecution is not required to prove restitution by the same quality of evidence required in a trial on the merits of the case. *People v. Rosales*, 134 P.3d 429, 433 (Colo. App. 2005).

## B. Analysis

¶ 25 At the hearing, Country Inn's owner described his insurance policy, with its $1000 deductible, and his belief that the policy limit for repairs was $410,000. Yet, the insurer's attorney and the uncontested documentary evidence showed that the insurer had paid $470,874.47 in repair expenses as of the date of the hearing. The attorney testified that the insurer had obtained an estimate of $683,000 to perform all required repair work and that the insurer intended to cover repair costs up to that estimated amount.

¶ 26 When challenged on the accuracy of the estimate, the attorney admitted that it was based on industry standards and that actual costs could be different. He described this difference as a "cost of doing business as a construction company" and said any differences would be absorbed by the construction company and not the insured.

¶ 27 During argument, A.V.'s counsel asked the court to order restitution only in the amount paid to date. In particular, she argued that the balance to complete the repairs existed only as a number in an exhibit, that the insurer's attorney "had no idea what [the] policy limits were," "couldn't testify to what amount out of

16

what had been paid," and did not know "whether the [estimate] was going to be the exact amount." She reasoned that the inaccuracy of the estimate would create a windfall for the insurance company.

¶ 28    Relying on the owner's testimony, the attorney's testimony, and two exhibits, the juvenile court found that, without considering depreciation, the total cost of repairing Country Inn would be in excess of $800,000. But, considering the depreciation, the insurer agreed to pay $687,365 and had $683,000 in reserves. The court rejected A.V.'s inaccuracy argument and found that estimates "are permitted in restitution claims and may be considered by [the court] for purposes of restitution." Thereafter, it ordered A.V. to pay $681,600[4] to the insurer and $1000 to the owner.

¶ 29    We discern no abuse of discretion in the court's order because the record supports it. As the fact finder, the court had the authority to determine the weight of the evidence, the witnesses' credibility, and ultimately the accuracy of the estimate. *See People v. Leonard*, 167 P.3d 178, 182 (Colo. App. 2007); *cf. People v. Henson*, 2013 COA 36, ¶¶ 18-19 (evidence, including a victim's

---

[4] This reflects the $683,000 minus the $1000 deductible and $400 in attorney fees.

testimony, that supported lost wages was "somewhat thin and unclear" but sufficient to support lost wage finding). Moreover, the court correctly found that it had the legal authority to consider estimated costs. *See* § 18-1.3-602(3)(a) (restitution includes "anticipated future expenses"); *Stafford*, 93 P.3d at 576 (concluding that witness testimony concerning company's total expenses incurred as a result of the defendant's theft was sufficient to support a restitution order); *Courtney*, 868 P.2d at 1128 (explaining how the victim's estimate of the value of tools inside his stolen car was sufficient to support restitution for lost tools). And the record demonstrates that A.V. thoroughly cross-examined the attorney on the accuracy of the estimates.

¶ 30    Once the prosecution presented competent evidence of the estimated expenses, A.V. could have rebutted the estimate by offering evidence of its inaccuracy. *People v. Miller*, 830 P.2d 1092, 1094 (Colo. App. 1991) ("[I]f the defendant fails to show that the information is inaccurate or untrue, the trial court is entitled to rely upon the report or statement as submitted."). Because he did not, the juvenile court properly relied on the evidence presented and imposed restitution for the total amount of the repairs. Therefore,

we affirm its restitution order with respect to the Country Inn losses.

IV.   Sufficient Evidence Supports the Animal Attractions Order

¶ 31   A.V. next contends that the invoices submitted with Animal Attractions' victim impact statement were insufficient to establish restitution and that the prosecution was required to present witness testimony to satisfy its burden.  We are not persuaded.

A.   Standard of Review and Law

¶ 32   A.V. preserved this issue when he objected to the court's order absent witness testimony.  We review sufficiency challenges de novo.  *People v. Barbe*, 2018 COA 123, ¶ 25; *People v. Ortiz*, 2016 COA 58, ¶ 26.  We determine "whether the evidence is sufficient in both quality and quantity to satisfy the applicable burden of proof." *Ortiz*, ¶ 26.

¶ 33   To meet its burden of proof, a prosecutor may rely solely on victim impact statements.  *See* § 18-1.3-603(2); *People v. Hill*, 296 P.3d 121, 126 (Colo. App. 2011).  The court may also order restitution for victims not named in the counts reflected in the judgment of conviction.  *People v. Foos*, 2016 COA 139, ¶ 21; *People v. Steinbeck*, 186 P.3d 54, 60 (Colo. App. 2007) (restitution statute

19

does not require the defendant be charged with a specific act to be ordered to pay restitution); *People v Armijo*, 989 P.2d 224, 227 (Colo. App. 1999) (explaining that the restitution statute does not authorize an award of restitution to persons not designated in the charge, unless the defendant agrees to pay such restitution); *see also United States v. Thompson*, 39 F.3d 1103, 1104 (10th Cir. 1994) (holding that where the defendant agreed to pay full restitution in exchange for the dismissal of forty-seven counts, it was proper to order full restitution).

## B.    Analysis

¶ 34    Before the restitution hearing, Animal Attractions submitted a victim impact statement requesting $2564.42 for its losses not covered by insurance.  Its insurer requested $2938.74 for the money it had paid out.  Attached to the statement were sales receipts documenting the money stolen from the safe and the damage to the back door, as well as a statement from its insurer documenting the costs related to lost terrariums and reptiles, and damage to the security cameras and monitor, safe, pet supplies, register, and clean up.

¶ 35    Contrary to A.V.'s argument, we are not persuaded that *People v. Rivera*, 250 P.3d 1272 (Colo. App. 2010), where a division of this court affirmed a restitution order based on documents and a witness statement at sentencing, required the juvenile court to receive testimony before ordering restitution here.  First, nothing in *Rivera* or in the plain language of the restitution statute requires the prosecution to present evidence in the form of testimony.  § 18-1.3-603(2) ("The court shall base its order for restitution upon information presented to the court by the prosecuting attorney . . . ."); *see also Vasseur*, ¶¶ 18-22 (the right of confrontation and the rules of evidence do not apply in a restitution proceeding).  To the contrary, the prosecution may rely solely on documentary evidence to meet its burden.  *See, e.g., People v. Stanley*, 2017 COA 121, ¶¶ 7-9 (ordering restitution based on documents only); *People v. Welliver*, 2012 COA 44, ¶ 6 (court was justified in relying on two documents attached to the presentence report in determining the amount of restitution); *People v. Brockelman*, 862 P.2d 1040, 1042 (Colo. App. 1993) (victim impact statement and police report established a basis for an order of restitution).  And when the prosecutor here submitted documents to

21

support his request, the burden shifted to A.V. to show that the requested amount was incorrect. *See Miller*, 830 P.2d at 1094 (absent evidence the information is incorrect, the trial court can rely on evidence submitted by the prosecutor). Because the documents support the court's order and A.V. offered no rebuttal evidence, we conclude that the court's order was not an abuse of discretion and affirm it.

V.     No Specific Reasonableness Findings Are Required

¶ 36     Relying on section 19-2-918(2), C.R.S. 2018, and *People in Interest of A.R.M.*, 832 P.2d 1093 (Colo. App. 1992), A.V. last contends that the juvenile court was required to make specific reasonableness findings before ordering restitution and that $692,806.20 is not a reasonable amount of restitution to be awarded against an incarcerated juvenile. Because the General Assembly has twice amended the version of the statute interpreted by *A.R.M.*, we conclude that *A.R.M.*'s holding is not relevant here and that no abuse of discretion occurred.

¶ 37     The current juvenile restitution statute provides as follows:

> (1) If the court finds that a juvenile who . . . is adjudicated a juvenile delinquent has damaged the personal or real property of a victim, that

22

the victim's personal property has been lost, or
that personal injury has been caused to a
victim as a result of the juvenile's delinquent
act, the court, in addition to any other
sentence or commitment that it may impose on
the juvenile pursuant to section 19-2-907,
shall enter a sentencing order requiring the
juvenile to make restitution as required by
article 18.5 of title 16 and part 6 of article 1.3
of title 18, C.R.S.

(2) Restitution shall be ordered to be paid in a
reasonable manner, as determined by the
court and in accordance with article 18.5 of
title 16 and part 6 of article 1.3 of title 18,
C.R.S.

§ 19-2-918. A.V. relies on the "reasonable manner" language and

*A.R.M.* to argue that a court is required to make specific,

on-the-record findings about the reasonableness of the restitution

amount and the reasonableness of repayment terms, considering

whether the restitution would cause serious hardship or injustice to

the juvenile. He further argues that a court should consider the

family's circumstances and the juvenile's potential ability to pay

after his release from incarceration.

¶ 38    In *A.R.M.,* the juvenile argued that the statute required the

court to consider his ability to pay restitution, and that since he

was incarcerated and unable to pay anything, the order should be

23

vacated. 832 P.2d at 1096. A division of this court disagreed, noting that the juvenile system has a strong interest in "encouraging the juvenile to be responsible for the damage he has caused," and so "wherever possible, restitution should be required." *Id.* It held that a court could order restitution for an incarcerated juvenile. *Id.* However, it further held that,

> at the time restitution is ordered, the court must make findings of the reasonableness of the restitution amount and the reasonableness of the repayment terms. In considering whether restitution would cause serious hardship or injustice to the juvenile, the court may consider family circumstances as well as the juvenile's potential ability to pay after his release from incarceration.

*Id.*

¶ 39 While we have no disagreement with the division's logical interpretation of the juvenile restitution statute in *A.R.M.*, we are precluded from following it because the General Assembly has amended the statute twice to remove the language on which *A.R.M.* relied. The version of the statute interpreted by *A.R.M.* provided that

> [i]f the court finds that a juvenile who receives a deferral of adjudication or who is adjudicated a juvenile delinquent has damaged the

24

personal or real property of a victim, that the victim's personal property has been lost, or that personal injury has been caused to a victim as a result of the juvenile's delinquent act, the court shall enter a sentencing order requiring the juvenile to make restitution for actual damages done to persons or property; except that the court *shall not order restitution if it finds that monetary payment or payment in kind would cause serious hardship or injustice to the juvenile.* Such order shall require payment of insurers and other persons or entities succeeding to the rights of the victim through subrogation or otherwise, if appropriate. Restitution shall be ordered *in a reasonable amount to be paid in a reasonable manner,* as determined by the court.

§ 19-2-703(4), C.R.S. 1991 (emphasis added).

¶ 40    In 1996, the General Assembly relocated and amended the statute, removing the "in a reasonable amount" language. *See* Ch. 288, sec. 9, § 19-2-918, 1996 Colo. Sess. Laws 1782. Four years later, it amended the statute again and removed the exception language that precluded restitution if it "would cause serious hardship or injustice to the juvenile." Ch. 232, sec. 2, § 19-2-918, 2000 Colo. Sess. Laws 1041-42.

¶ 41    We conclude that these deletions reflect the General Assembly's intent to remove ability to pay and hardship from a juvenile court's consideration when ordering restitution. *McLain,*

25

¶ 9 (when statutory language is clear we look no further). In doing so, we recognize the harsh result of our interpretation in this case, and its arguable inconsistency with other legislative enactments in recent years aimed at diminishing the punitive aspects and increasing the rehabilitative aspects of juvenile sentencing. *See, e.g.*, § 19-2-102(1), C.R.S. 2018 (explaining that the intent of the juvenile system includes consideration of the "best interests of the juvenile"); § 19-2-402(1)(c), C.R.S. 2018 (limiting juvenile detention for juveniles between ten and thirteen years old); Ch. 128, sec. 1, § 19-2-517, 2012 Colo. Sess. Laws 439-40 (raising the age of direct-filing from fourteen to sixteen); *see also People in Interest of J.S.R.*, 2014 COA 98M, ¶ 31 ("[U]nlike the adult criminal justice system, the purpose of the juvenile system is primarily rehabilitative, not punitive."). Nevertheless, we are bound by the statute's plain language, which mandates that the juvenile court order full restitution for the victims' losses. *See Riley v. People*, 104 P.3d 218, 221 (Colo. 2004) ("There is a presumption that the word 'shall' when used in a statute is mandatory."). Accordingly, we affirm the court's orders.

## VI. Conclusion

¶ 42    The orders of restitution are affirmed.

JUDGE TERRY and JUDGE NAVARRO concur.